Argued and submitted October 9, affirmed December 31, 2008

GMK DEVELOPMENTS, LLC
and Kevin Warner,
*Petitioners,*

*and*

Mike ADAIR,
Joanne Adair,
Norman Lee, Phyllis Lee and Wayne Lee,
*Intervenors-Petitioners below,*

*v.*

CITY OF MADRAS
and Madras Land Development Company, LLC,
*Respondents.*

Land Use Board of Appeals
2008003

Joel FULLER
and Williwaw, Inc.,
*Petitioners,*

*and*

Mike ADAIR,
Joanne Adair,
Norman Lee, Phyllis Lee and Wayne Lee,
*Intervenors-Petitioners below,*

*v.*

CITY OF MADRAS
and Madras Land Development Company, LLC,
*Respondents.*

Land Use Board of Appeals
2008005; A139688

199 P3d 882

Andrew H. Stamp argued the cause for petitioners GMK Developments, LLC, and Kevin Warner. With him on the joint brief was Bruce W. White for petitioners Joel Fuller and Williwaw, Inc.

Robert S. Lovlien argued the cause for respondent City of Madras. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Dana L. Krawczuk argued the cause for respondent Madras Land Development, LLC. With her on the brief were Steven P. Hultberg, Megan D. Walseth, and Ball Janik LLP.

Christopher D. Crean and Beery, Elsner & Hammond, LLP, filed the brief *amicus curiae* for League of Oregon Cities.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

### LANDAU, P. J.

Petitioners seek review of a decision of the Land Use Board of Appeals (LUBA) affirming the City of Madras' amendment to its comprehensive plan. The amendment adopts a report that updates analysis of the city's supply of buildable land that is available to meet housing and commercial needs. According to petitioners, LUBA erred in affirming the city's decision adopting the report for two reasons. First, they complain that, because the report identifies a shortfall of buildable land, the city was obligated to revise its comprehensive plan to identify additional buildable land to satisfy the shortfall. LUBA erred, they argue, in failing to require the city to remedy the shortfall that its report identified. Second, petitioners assert that the report contains information that is at odds with the text of the comprehensive plan in certain respects. According to petitioners, LUBA should have required the city to revise the inconsistent portions of the comprehensive plan. We conclude that LUBA correctly held that the law does not require the city to take either action. We therefore affirm.

The basic facts are not in dispute and are set forth in LUBA's opinion:

> "The city initiated a legislative process to establish urban reserve areas containing a fifty-year land supply. Accordingly, the city's consultants evaluated housing types, densities and needs over a 20-year and 50-year planning horizon. That evaluation resulted in the [Madras Urbanization Report (MUR)], an updated needs analysis and inventory for residential and employment land under Goal 9 (Economic Development) and Goal 10 (Housing). The MUR's housing needs analysis identifies a need for housing of all types for all income levels, including high-end housing, at the end of the 50-year planning period. The MUR concluded that a portion of that identified need could be satisfied by a master planned community.
>
> "In December, 2007, the city amended its comprehensive plan to adopt the MUR as a background document[.]"

The MUR projected that, over the course of the next 50 years, the city eventually will face a shortfall in the supply of buildable land, excluding public facilities land. The city, however,

did not immediately designate urban reserve areas or expand the existing urban growth boundary (UGB) to meet anticipated future buildable land needs. The city instead decided first to adopt the MUR as a background technical document and set aside additional land or expand the UGB as needed in the future.

The MUR, which the city adopted, noted that the existing plan might contain "dated text related to population, employment and land needs." It also noted that, "[t]o ensure internal consistency, dated information must be removed from the existing comprehensive plan text and replaced with new information."

Petitioners are owners of property in the Madras area, located near, but not within, the UGB. They are interested in having their property included within the UGB to meet the city's housing needs. Before LUBA, they argued that, because the MUR identified a shortfall in buildable land by the end of the planning period, the city was obligated to amend the UGB—simultaneously with the adoption of the MUR—to meet that shortfall. Petitioners argued that, because the city chose to adopt the MUR as a comprehensive plan amendment, it was obligated to demonstrate, contemporaneously with the adoption of the MUR, that all applicable land use goals have been satisfied. According to petitioners, Goal 10 requires cities to designate and zone sufficient land to meet identified housing needs. They also argued that Goal 2 requires the city to adopt, contemporaneously with the adoption of the MUR, changes to other portions of the comprehensive plan that are inconsistent with the information contained in the MUR.

LUBA rejected both contentions. LUBA concluded that "nothing cited to us in the language of Goal 10 or its implementing rules requires the city to contemporaneously adopt a UGB amendment to remedy a projected shortfall in housing over a 20-year or 50-year period." As for petitioners' Goal 2 argument, LUBA noted that, although language in the guidelines to that goal states that the comprehensive plan should "form a consistent whole," those guidelines "are not mandatory approval criteria that must be satisfied in

order to approve or deny a post-acknowledgement plan amendment."

On review, petitioners assign error to LUBA's disposition of both their Goal 10 and Goal 2 arguments, essentially reprising the arguments that they advanced before LUBA.

■ We begin with petitioners' Goal 10 argument. Goal 10 provides, in part, that "[b]uildable lands for residential use shall be inventoried and plans shall encourage the availability of adequate numbers of needed housing units." As LUBA correctly observed, nothing in the wording of the goal requires a local government to take any specific action in response to the adoption of a housing needs projection.

Petitioners insist that, if Goal 10 does not require such action, then ORS 197.307(3)(a) and OAR 660-008-0010—which implement Goal 10—do. ORS 197.307(3)(a) provides that,

"[w]hen a need has been shown for housing within an urban growth boundary at particular price ranges and rent levels, needed housing, including housing for farmworkers, shall be permitted in one or more zoning districts or in zones described by some comprehensive plans as overlay zones with sufficient buildable land to satisfy that need."

In a similar vein, OAR 660-008-0010 provides, in part, that

"[t]he mix and density of needed housing is determined in the housing needs projection. Sufficient buildable land shall be designated on the comprehensive plan map to satisfy housing needs by type and density range as determined in the housing needs projection."

Neither of those provisions, as LUBA again correctly observed, requires that a local government expand a UGB or take any other action to increase the supply of land in response to a need projected to occur 20 or 50 years out into the future.

Pertinent, in that regard, is the fact that the legislature has adopted precisely such a requirement in ORS

197.296(6), which provides, in part, that, if a local government's housing need is determined to be greater than housing capacity, the local government is required to

"(a) [a]mend its urban growth boundary to include sufficient buildable lands to accommodate housing needs for the next 20 years. * * *;

"(b) [a]mend its comprehensive plan, regional plan, functional plan or land use regulations to include new measures that demonstrably increase the likelihood that residential development will occur at densities sufficient to accommodate housing needs for the next 20 years without expansion of the urban growth boundary. * * *; or

"(c) [a]dopt a combination of the actions described in paragraphs (a) and (b) of this subsection."

The problem is that that section applies only to local governments with a population of 25,000 or more. ORS 197.296(1). It is undisputed that ORS 197.296 does not apply to the city in this case.

If Goal 10 already obligates local governments to amend UGBs to accommodate projected housing needs, as petitioners suggest, then ORS 197.296 is completely unnecessary and, in fact, a redundancy. "As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005). The fact that the legislature enacted ORS 197.296 strongly suggests that the existing regulatory framework was understood *not* to impose the requirements that petitioners now contend that it independently does. Moreover, the fact that the legislature expressly provided that the requirements of ORS 197.296(6) apply only to cities with a population of 25,000 or more strongly suggests that the legislature intended that the same requirements *not* apply to cities with smaller populations. We therefore conclude that LUBA did not err in rejecting petitioners' contention that the city's approval of the MUR violated the requirements of Goal 10.

■      We turn to petitioners' Goal 2 argument. Goal 2 provides, in part, that, "[t]o establish a land use planning process and policy framework as a basis for all decisions and actions related to use of land and to assure an adequate factual base for such decisions and actions," all land use plans must include inventories and other factual information for each applicable statewide planning goal. Guidelines to Goal 2 further provide that "[a]ll of the elements [of a land use plan] should fit together and relate to one another to form a consistent whole at all times." As LUBA correctly pointed out, however, nothing in Goal 2 itself requires the sort of continuous data correction that petitioners urge us to impose in this case. And, while the guidelines exhort cities to be sure that the parts of land use plans "should fit together" to "form a consistent whole," nothing in those guidelines suggest that the exhortation is an approval criteria for the adoption of a background document. *See 1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 452, 724 P2d 268 (1986) (land use guidelines are "suggested approaches designed to aid cities, counties, state agencies, and special districts in carrying out the goals" (internal quotation marks omitted)); *Downtown Comm. Assoc. v. City of Portland*, 80 Or App 336, 340-41, 722 P2d 1258, *rev den*, 302 Or 86 (1986) (state land use "guidelines" are "non-mandatory").

Aside from that, it is not clear to us that there is a conflict between the MUR and the balance of the comprehensive plan in the first place. As LUBA noted, although the city noted, in adopting the MUR, that some existing data might be rendered "dated," the MUR made clear that the newer information supersedes contrary data in the existing comprehensive plan.

We conclude that LUBA did not err in rejecting petitioners' contention that, in approving the MUR, the city violated Goal 2.

Affirmed.